IN THE UNITED STATES DISTRICT COURT
DISTRICT OF WYOMING

UNITED STATES of AMERICA, for the
Use and Benefit of BLUE STONE
CONSTRUCTION, INC., a North Dakota
Corporation,

*Plaintiff*

v.

Case No. _____

TRAVELERS CASUALTY AND
SURETY COMPANY OF AMERICA, a
Connecticut Corporation and CONTI
FEDERAL SERVICES, LLC, a Delaware
Limited Liability Company,

*Defendants*

## **COMPLAINT**

### **Parties, Jurisdiction, & Venue**

1.    Defendant Conti Federal Services, LLC ("Conti") is a Delaware limited liability company.  Its principal office location is 13501 Ingenuity Dr., Suite 310, Orlando, FL 32826.

2.    Conti is the general contractor on a construction project on F.E. Warren Air Force Base.  The project was solicited by the U.S. Army Corps. of Engineers ("USACE"), Omaha District, under Solicitation No. W9128F21R00700015.  The project was for the Consolidated Helo/TRF Ops/AMU and Alert Facility (the "Project").

3.    The initial value of Conti's contract with USACE for the Project was $124,733,987.00.

1

4.      Plaintiff Blue Stone Construction, Inc. ("Bluestone") is a North Dakota corporation.  Its principal office location is 6898 163rd Ave. SE, Sawyer, ND 58781.

5.      Bluestone is a subcontractor to Conti on the Project.

6.      The initial value of Bluestone's subcontract with Conti was $8,981,070.00.

7.      A true and correct copy of the subcontract between Conti and Bluestone for the Project is attached as **Exhibit A** (the "Subcontract").

8.      Defendant Travelers Casualty and Surety Company of America ("Travelers") is a Connecticut corporation.  Its principal office location is One Tower Square, Hartford, CT 06183.

9.      Travelers issued Payment Bond 107693011 for the benefit of the United States, with Conti as the bond principal (the "Bond").

10.     A true and correct copy of the Bond is attached as **Exhibit B**.

11.     The penal sum of the Bond is $124,733,987.00.

12.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 40 U.S.C. § 3133(b)(1) (Miller Act).

13.     This Court has personal jurisdiction over the parties.

14.     Venue is proper in this Court under 40 U.S.C. §3133(b)(3).

15.     The Subcontract contains a valid and enforceable arbitration provision.  *See* Complaint Exhibit A at § 40.

16.     Bluestone brings this action to preserve its rights against the Bond under the Miller Act, but Bluestone intends to move to stay this lawsuit pending arbitration between Bluestone and Conti.

2

## Factual Allegations

17.    Conti issued several change orders that deducted money from Bluestone's subcontract, ostensibly to fund supplementary forces from another subcontractor, 4-Quarters Excavation and Development ("4-Quarters").

18.    These change orders purported to fund 4-Quarters, which was under subcontract with Conti, to perform work that was within Bluestone's scope and under Bluestone's control and direction on a time and materials basis.

19.    The change orders did not define the scope of work that 4-Quarters was to perform.

20.    Contrary to the text of the change orders, Conti, not Bluestone, controlled and directed 4-Quarters' work.

21.    The change orders were invalid because they lacked consideration.

22.    Conti directed 4-Quarters to perform work that was outside of Bluestone's scope and paid for it with money that was taken from Bluestone's subcontract.

23.    Bluestone's contract scope of work in the hangar bays was the subgrade and the "free draining non-frost susceptible layer" which is the same drainage layer used in the airfield.

24.    In the first month or so of construction, Bluestone built the building pad. Bluestone performed all of the appropriate compaction and moisture conditioning for the building pad and upon completion of the pad, Bluestone began digging footings.

25.    Conti performed compaction tests on Bluestone's work.  Conti meanwhile pushed us to proceed with all due haste.

3

26.    When it came time to grade the inside of the hangar bays, the Conti QC team wanted Bluestone to go back and dig up all the subgrade to compact it again, fearing they did not do their job correctly at the beginning of the project.

27.    Conti had 4-Quarters "pothole" some areas in the hangar bay to take some compaction tests. They did this and all the tests passed and the material was determined to be suitable.

28.    Nonetheless, Conti directed 4-Quarters to excavate all of the hangar bays to 2' down from the top of subgrade and recompact. To make matters worse, this was done after all of the underground electrical was installed which made the whole process much slower.

29.    This unnecessary work was being charged to Bluestone by Conti.

30.    After all the subgrade was re-done, the drainage layer was installed.

31.    Bluestone's contract excluded the fine grading of the drainage layer.

32.    Conti ignored this and had 4-Quarters finish grade all the drainage layer in the hangar bays and charged it to Bluestone.

33.    When the first hangar bay was ready for concrete, the mix design for the concrete was rejected.

34.    Conti needed to continue work in the hangar bays, so Conti tore out all the forming and insulation and floor heat piping so they could run lifts in the hangar and work on it throughout the winter of '24-'25.

4

35.    Conti worked throughout the winter and when it was time to prep the hangar bays again in the spring, Conti charged Bluestone for the fine grading that 4-Quarters did to get the area ready to pour again.

36.    After the hangar bays were ready to pour again in the spring, Conti discovered the drainage layer that was installed by 4-Quarters under Conti's direction wasn't thick enough.

37.    Conti had 4-Quarters remove the drainage layer, regrade the subgrade, replace the drainage layer and fine grade it, all at Bluestone's expense.

38.    Just in the hangar bays portion of the Project, Conti improperly back charged Bluestone for: (a) 2' of overexcavation and recompaction of the subgrade; (b) fine grading of the drainage layer; (c) fine grading of the drainage layer again in the spring; (d) removal of the drainage layer; (e) regrading of the subgrade; (f) replacement of the drainage layer; (g) and fine grading of the drainage layer.

39.    Conti also improperly back charged Bluestone for all of the insulation, hydronic heating piping, and the labor to reinstall it after Conti had 4-Quarters remove and replace and regrade the drainage layer for the third time.

40.    Conti directed 4-Quarters to dig and backfill the trench drains and mullion pits shown in the detail below.



41.    These items were outside of Bluestone's scope. Bluestone was only responsible for the stem wall at the exterior of this section.  The trench drain should have been in the plumber's scope like all the other interior drains.

42.    Upon information and belief, Conti back charged Bluestone for this out-of-scope work.

43.    Upon information and belief, Conti back charged Bluestone for the excavation and backfill of the loading dock and dumpster enclosure, which was out of Bluestone's scope.

44.    Each manhole had a "rim" elevation called out on the utility plans.  The detail calls for a solid lid with the casting cast into this solid lid.  There was no adjustment called for in the plan or specs.

45.    Bluestone provided Conti with shop drawings prior to the manholes being manufactured and they were approved and went into production.

46.    The manholes were installed to the rim elevations called for in the plans.

47.     Once the airfield construction was underway, Conti told Bluestone it would have to adjust every one of the manholes to match the proposed concrete paving section. This is difficult because it is a solid concrete lid that sits on top of a square box section with 10" thick walls. The only way to adjust this lid is by horizontally cutting the 10" walls around the entire box.

48.     Bluestone told Conti that this would be a change order because of how the government designed the manholes without any provision for adjustment.

49.     Conti instead had 4-Quarters make the adjustments and improperly back charged it to Bluestone.

50.     USACE directed a change to their generator pad based on some weight calculations performed post-bid.  This changed the section of the generator pad.  Conti directed 4Q to install this new section using Bluestone supplied materials.

51.     Conti negotiated a change order with USACE, but never passed that change order on to Bluestone.  Conti negotiated a change order for less than what the work cost Bluestone.

52.     Upon information and belief, Conti used Bluestone subcontract funds to pay 4-Quarters to perform the earthwork for the crash/fire facility, which was not part of Bluestone's scope.

53.     The government had an airfield lighting system that included some approach lighting for helicopters landing and taking off.  The west half of this approach lighting was outside of the grading limits of the project.  The installed elevations of the light cans did not match the existing grades.  Conti demanded that Bluestone complete this grading but

7

as it was outside of Bluestone's design grading area,  Bluestone had no grades to grade it to.  Bluestone had no idea what Conti wanted the finish grades to be.

54.     Any grading outside of the grading limits Bluestone was given would be a change order, which Conti refused to issue.

55.     Leif Anderson from Bluestone was onsite 12/30/25.  He observed the area around the airfield lighting was graded not only around the lights but several hundred feet south of the lights. He also observed some drainage swales constructed from the apron to the south.

56.     Upon information and belief, Conti paid 4-Quarters to perform this out-of-scope earthwork using Bluestone subcontract funds.

57.     Upon information and belief, Conti paid 4-Quarters to build gravel access roads around the Project, which were not in Bluestone's scope, using Bluestone subcontract funds.

58.     Upon information and belief, Conti paid 4-Quarters to add a two foot gravel shoulder to the asphalt access road that is not shown on the plans using Bluestone subcontract funds.

59.     There is an asphalt shoulder that goes around the entire perimeter of the concrete airfield.  This section ties into the thickened edge of the concrete paving.  Conti directed 4-Quarters to do this work.  The section that was installed is not what the plans called for. Here is the section from the plans:

8



**C7  PROPOSED PCC TO PROPOSED ASPHALT SHOULDER PAVEMENT JUNCTION**
SCALE NTS

60.    Conti directed 4-Quarters to install first a geotextile fabric (of which there are none under any asphalt paving on the project), then 8" of drainage layer, then 6" of road base, then the asphalt paving was installed. This meant that the section was 17" deep instead of 13".

61.    Upon information and belief, this unauthorized upgraded work was paid for with Bluestone subcontract funds.

62.    Conti improperly withheld payment from Bluestone for work that Bluestone performed.

63.    Conti failed to properly sequence work on the Project, which led to other contractors damaging Bluestone's completed work.  Conti failed to pay Bluestone for the rework.

64.    Conti improperly back charged Bluestone for work performed by others that was outside of Bluestone's scope.

9

65. Conti improperly terminated Bluestone for damage to Bluestone's work that was caused by others.

### Count I – Miller Act Bond Claim

66. Bluestone incorporates the above allegations by reference.

67. The federal government awarded Conti a construction contract for the Project that exceeded $100,000 in value, so Conti was required under 40 U.S.C. §3131(b)(2) to provide a payment bond for the protection of those providing labor and material on the Project.

68. Conti obtained the Bond from Travelers and submitted it to USACE for the Project.

69. Bluestone provided labor and materials to the Project under the Subcontract from March 13, 2023, to June 13, 2025.

70. Bluestone has not been paid for at least $1,067,758.39 of labor and materials it provided to the Project at Conti's instance and direction.

71. Bluestone has been damaged by Conti's failure to pay it. Bluestone's damages are at least $1,067,758.39.

72. Bluestone is entitled to judgment in its favor and against Travelers for the amount of damages proven at trial, plus interest, costs, and disbursements.

### Count II – Breach of Contract

73. Bluestone incorporates the above allegations by reference.

74. There is a valid and enforceable contract between Bluestone and Conti.

75. Bluestone performed all conditions precedent under the contract.

76. Conti breached the contract by interfering with Bluestone's work, damaging Bluestone's work, failing to coordinate work on the Project, failing to approve change orders for work it had ordered Bluestone to perform, failing to pay Bluestone for work it had performed, improperly back charging Bluestone for out-of-scope work, and improperly terminating Bluestone.

77. Bluestone has been damaged by Conti's breaches of contract.

78. The amount of those damages is at least $1,067,758.39.

79. Bluestone is entitled to judgment in its favor and against Conti for the amount of damages proven at trial, plus interest, costs, disbursements, and attorneys' fees.

### Count III – Quasi-Contract

80. Bluestone incorporates the above allegations by reference.

81. Bluestone provided materials, equipment, and labor to the Project at the request of Conti.

82. Bluestone provided the materials, equipment, and labor with the reasonable expectation that it would be paid for doing so.

83. Conti knowingly accepted the materials, equipment, and labor provided by Bluestone.

84. Conti derived a benefit from the materials, equipment, and labor provided by Bluestone.

85. Conti did not pay Bluestone for all of the materials, equipment, and labor it provided to the Project.

86.    It would be inequitable for Conti to retain the benefit it received from Bluestone's material, equipment, and labor without payment to Bluestone.

87.    The fair and reasonable value of the materials, equipment, and labor that Bluestone provided to the Project for which Conti has not paid is at least $1,067,758.39.

88.    Bluestone is entitled to a judgment in its favor and against Conti in the amount of its damages proven at trial, plus interest, costs and disbursements.

**WHEREFORE**, Plaintiff respectfully asks this Court to enter judgment that:

1. Awards Plaintiff its damages proven at trial;

2. Awards Plaintiff its costs and disbursements;

3. Awards Plaintiff its attorneys' fees; and

4. Grants any further relief the Court deems just and expedient.

Dated June 9, 2026.

/s/ Jamie N. Dickinson
Jamie N. Dickinson
SPENCER FANE LLP
1700 Lincoln Street, Suite 2000
Denver, CO 80203
Telephone: (303)839-3826
Email: jndickinson@spencerfane.com

Attorneys for PLAINTIFF BLUE STONE CONSTRUCTION INC.

12